# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**LYNSEY BOURKE**,

                Debtor.

Case No.  **15-60785-7**

### MEMORANDUM OF DECISION

At Butte in said District this 24th day of December, 2015.

Pending in this Chapter 7 case is the amount of damages to be awarded to the Debtor Lynsey Bourke ("Lynsey" or "Debtor") against Missoula Bone & Joint, LLC ("Missoula Bone & Joint") for its willful violations of the automatic stay under 11 U.S.C. § 362(k)(1), when Missoula Bone & Joint continued sending Lynsey collection letters after being served with notice of the filing of Lynsey's bankruptcy petition and the automatic stay.  This Court granted Debtor's Motion for Sanctions for Violation of the Automatic Stay ("Debtor's Motion") (Document No. 17) against Missoula Bone & Joint by Order (Doc. 25) entered on November 17, 2015, after Missoula Bone & Joint failed to file a response and request for hearing on Debtor's Motion within the allowed notice period, after service of Debtor's Motion.  A hearing on the amount of damages to be awarded to the Debtor for Missoula Bone & Joint's stay violations was held after notice at Missoula on December 3, 2015.  Lynsey appeared and testified, represented by attorney Nik G. Geranios ("Geranios") of Geranios Law, PLLC, of Missoula.  No appearance was made at the hearing on behalf of Missoula Bone & Joint.  Exhibits ("Ex.") 1, 2, 3, 4, 5, and 6 were admitted into evidence.  At the conclusion of the Debtor's case-in-chief the Court granted

1

Debtor's attorney time to submit an affidavit of attorney's fees and costs incurred in relation to
Debtor's Motion, and took the matter under advisement.  Geranios filed his affidavit of
attorney's fees on December 7, 2015, including billing records showing that he performed tasks
related to Debtor's Motion dating from 10/05/2015 to 12/07/2015, totaling $1,700.00 in
professional fees.  The Court has reviewed Geranios' billing records, together with the record and
applicable law.  This matter is ready for decision.  For the reasons set forth below the Court will
enter Judgment against Missoula Bone & Joint in the total amount of $2,649.46 for its willful
violations of the stay under § 362(k)(1).

This Court has jurisdiction of this bankruptcy case under 28 U.S.C. § 1334(a).  Debtor's
Motion for Sanctions for violations of the automatic stay is a core proceeding under 28 U.S.C. §
157(b)(2).

### FACTS & PROCEDURAL HISTORY

Lynsey is a recent graduate of the University of Montana ("U of M").  Currently she is
employed in Missoula as an office manager, and in addition as an adjunct professor at U of M.
She testified that she thought that, with her level of education, she would never be in a condition
where she had to file bankruptcy.

However, she suffered two injuries which required a surgery and therapy.  She testified
that all of her paychecks were going to make payments, and then she lost her job.  She received
collection demand letters from Missoula Bone & Joint and other creditors, and she testified that
she felt under "incredible stress" for approximately one year.

Lynsey testified that she filed bankruptcy in order to reduce stress and get a fresh start.
She filed her Chapter 7 bankruptcy petition on August 20, 2015, with her Schedules and

2

Statement of Financial Affairs.  Ex. 1 is Debtor's Schedule F showing "Bone & Joint" as a creditor with an unsecured nonpriority claim in the amount of $2,500.00, and an address of 2360 Mullan Road in Missoula, MT 59808.

The notice of commencement of the case, meeting of creditors, deadlines, and a warning to creditors not to collect a debt take certain actions or risk being penalized, was sent to creditors on August 22, 2015, including to "Bone & Joint" at 2360 Mullan Road., Missoula, MT 59808-1811.  The notice, Ex. 2, informs creditors they may not take certain action, such as "contacting the debtor by telephone, mail or otherwise to demand repayment . . . ."  Lynsey testified that her attorney advised her that the filing of her bankruptcy petition would stop the collection demands. However, they did not stop.

Lynsey testified that she received Ex. 3, a "Patient Statement" from Missoula Bone & Joint at "2360 Mullan Road, STE C, Missoula, MT 59808-1811" dated 09/22/2015, requesting payment of a total of $340.00 for patient visits in June and July of 2015, on September 22, 2015. Lynsey testified that she had been told by her attorney that the demand letters for her prepetition debts would stop after she filed bankruptcy and that she was very concerned when she continued to receive bills.  She called her attorney and asked about Ex. 3.  Ex. 4 is a second patient statement to Lynsey from Missoula Bone & Joint dated 10/13/2015, which also asks for payment of the $340 in prepetition debt.

Debtor's attorney Geranios offered Ex. 5 as an example of a letter he had sent to Missoula Bone & Joint, at 2360 Mullan Road, #C, Missoula, in another case involving a violation of stay, to show its proclivity to pursue collection activity after being informed of a bankruptcy filing. Ex. 5 explains the automatic stay and states that if Missoula Bone & Joint takes any further

action to collect the debt it will be treated as a willful violation of the stay and Geranios will file

suit to hold Missoula Bone & Joint in contempt and seek damages and attorneys' fees.  Geranios

informed the court that he had not sent a letter to Missoula Bone & Joint informing it of the

violation of stay prior to filing her Motion, given previous correspondence to Missoula Bone &

Joint in other cases.

On October 28, 2015, Debtor filed her Motion (Doc. 17) seeking sanctions against

Missoula Bone & Joint for sending the Debtor Ex. 3 and 4 seeking collection of prepetition debts

with notice and actual knowledge of the automatic stay.  The Motion was served on Missoula

Bone & Joint at 2360 Mullan Rd, Ste. C, Missoula, MT 59808, with notice of the opportunity to

respond and request a hearing, and that failure to respond shall be deemed an admission that the

relief requested should be granted.

Lynsey testified that she received another bill from Missoula Bone & Joint dated

11/3/2015, Ex. 6, again asking for payment of the $340 in prepetition debt.  When Missoula

Bone & Joint did not file a timely response to Debtor's Motion, the Court entered its Order (Doc.

25) on November 17, 2015, granting Debtor's Motion and scheduling the hearing on the award of

sanctions against Missoula Bone & Joint for December 3, 2015.

Lynsey testified that she missed one U of M adjunct class due to her attendance at the

hearing, and that she missed some office manager work while on phone calls with her attorney.

She testified that her office manager job pays her $11.50 per hour, and that she missed a total of

3 or 4 hours of work, which comes to between $34.50 to $46.00 in lost hourly income.  As an

adjunct at U of M she is paid a salary, and she testified that she suffered no lost salary.  She

traveled 7 miles each way to attend the hearing, which at the mileage rate allowed by the United

4

States of America, Internal Revenue Service, of \$.565 per mile, comes to \$3.96 in mileage costs to attend the hearing.  The Court finds that Lynsey incurred a total \$49.96 in lost income and mileage for the hearing on damages.

Debtor's Motion seeks damages from Missoula Bone & Joint for emotional distress and contends that its postpetition collection efforts interfered with her psychological well being and caused her stress and worry.  She testified that Missoula Bone & Joint's postpetition collection actions were confusing and emotionally upsetting, and reminded her of the difficulty she had experienced during the past few years.  No evidence exists that Lynsey sought medical treatment or medication for stress caused by Missoula Bone & Joint.

With respect to punitive damages, the Debtor offered no evidence of Missoula Bone & Joint's financial condition or its ability to pay punitive damages.  Debtor's attorney suggested a punitive damages award of between \$7,500 to \$10,000 in order to get Missoula Bone & Joint to change its policies, but no evidence exists in the record showing what Missoula Bone & Joint's policies currently are.

Geranios' affidavit sets forth services provided in relation to Debtor's Motion for Sanctions beginning 10/01/2015 through 12/7/2015.  Geranios's legal services totaled \$1,700 in attorney fees for preparation and filing of Debtor's Motion, and preparation for and attending the hearing on damages.  Geranios does not request any costs.  After review, the Court finds that the \$1,700.00 in fees requested by Geranios performed in filing and litigating the Motion for Sanctions are reasonable and necessary for the estate.

## DISCUSSION

The Debtor's filing of her bankruptcy petition on August 20, 2015, gave rise to an

5

"automatic stay." 11 U.S.C. § 362(a). The Ninth Circuit has repeatedly described the broad

scope of the automatic stay as "one of the most important protections in bankruptcy law."

*Sternberg v. Johnston,*[1] 595 F.3d 937, 943 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 102, 178

L.Ed.2d 29 (2010), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir.

2002); *Lynseyis Motors, Inc. v. Haw. Auto Dealers' Assoc.*, 997 F.2d 581, 585 (9th Cir. 1993).

The Ninth Circuit construed the automatic stay in *In re Gruntz*, 202 F.3d 1074, 1081-82 (9th Cir.

2000):

> The automatic stay is self-executing, effective upon the filing of the bankruptcy
> petition. *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State
> Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco
> Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986). The automatic stay
> sweeps broadly, enjoining the commencement or continuation of any judicial,
> administrative, or other proceedings against the debtor, enforcement of prior
> judgments, perfection of liens, and "any act to collect, assess or recover a claim
> against the debtor that arose before the commencement of the case." 11 U.S.C. §
> 362(a)(6).

Section 362(k)[2] in effect in this case provides:

> [A]n individual injured by any willful violation of a stay provided by this section
> shall recover actual damages, including costs and attorneys' fees, and in
> appropriate circumstances, may recover punitive damages.

*In re Snowden*, 769 F.3d 651, 658 (9th Cir. 2014); *Leetien, P.C., v. Roman (In re Roman)*, 283

B.R. 1, 9 (9th Cir. BAP 2002).

The long-standing rule followed by this and other courts is that a violation of the stay is

---

[1] On the issue of attorney's fees, the Ninth Circuit overruled *Sternberg* "to the extent it is
inconsistent with this opinion . . . ." *Am. Servicing Co. v. Schwartz-Tallard (In re Schwartz-
Tallard)*, 803 F.3d 1095, 1097 (9th Cir. 2015). *Sternberg* remains good law for the general
principles stated above.

[2] Section 362(h) was amended and redesignated as § 362(k) by enactment of BAPCPA in
2005.

willful if (1) the creditor knew of the stay and (2) the creditor's actions which violated the stay were intentional. *Roman,* 283 B.R. at 8; *Leetien & Adler*, 309 F.3d at 1215. In *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003), the Ninth Circuit noted that § 362(k) provides for damages for willful violation of the stay upon a finding that the defendant knew of the automatic stay and that the defendant's actions, which violated the stay, were willful. *See also Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 191 (9th Cir. 1995) (cited in *Roman*, 283 B.R. at 12-13).

A party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay. *Dyer*, 322 F.3d at 1191, *citing Pinckstaff v. United States*, 974 F.2d 113, 115 (9th Cir. 1992). Further, "once a creditor or actor learns or is put on notice of a bankruptcy filing, any actions intentionally taken thereafter are 'willful' within the contemplation of § 362([k])." *Risner*, 317 B.R. at 835, citing *Leetien & Adler*, 309 F.3d at 1215; *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. 920, 923 (Bankr. D. Mont. 1990).

Given the broad, self-executing, automatic stay described above, the Court's granting of Debtor's Motion against Missoula Bone & Joint for willfully violations of the automatic stay was appropriate when Missoula Bone & Joint continued sending the Debtor the invoices shown by Ex. 3, 4 and 6 seeking collection of prepetition debts after it received notice of the stay.

Although Debtor's Schedules and the notice of commencement of the case referred to "Bone & Joint" and the notice was sent to an address that did not include the suite number, Debtor's Motion was sent to Missoula Bone & Joint and included the suite number. Missoula Bone & Joint had an affirmative duty to conform its conduct to the automatic stay once Lynsey filed for bankruptcy. *Sternberg*, 595 F.3d at 943, 944; *Del Mission Ltd.*, 98 F.3d at 1151-52.

7

This duty means that Missoula Bone & Joint needed to do what it could to remedy the violation. *Sternberg*, 595 F.3d at 944, 945.  Missoula Bone & Joint failed its affirmative duty to remedy the violation.  Instead, the evidence shows that Missoula Bone & Joint continued to send Lynsey bills for collection of prepetition debts after receiving notice of her bankruptcy filing.

Such actions taken in violation of the automatic stay are void, not merely voidable. *Gruntz*, 292 F.3d at 1082; *40235 Wash. St. Corp. v. Lusardi*, 329 F.3d 1076, 1082 (9th Cir. 2003); *Schwartz v. United States*, 954 F.2d 569, 570-71, 575 (9th Cir.1992); *Lynseyis Motors, Inc.*, 997 F.2d at 586.  A creditor who attempts collection of prepetition debt after it knows of the debtor's bankruptcy is subject to sanctions for willful violation of the automatic stay.  *Del Mission Ltd.*, 98 F.3d at 1151; *see In re Goodman*, 991 F.2d 613 (9th Cir.1993).  The postpetition collection actions initiated by the creditor in *Leetien* were in plain violation of the stay and void and subject to sanctions.  The bankruptcy court imposed sanctions for willful violations of the stay and the district court and Ninth Circuit affirmed.  *Leetien,* 309 F.3d at 1212.  The Ninth Circuit wrote:

> We conclude that § 362(a) imposes an affirmative duty to discontinue postpetition collections actions.  Sanctions are appropriate pursuant to § 362(h) because Eskanos willfully violated the automatic stay by maintaining the active collection action and unjustifiably delaying its dismissal after receiving notice of the bankruptcy petition.

*Leetien*, 309 F.3d at 1216; *see, Sternberg*, 595 F.3d at 943.

The Ninth Circuit quoted above noted that the creditor willfully violated the stay by maintaining an active collection action "and unjustifiably delaying its dismissal" after receiving notice of the stay.  *Leetien*, 309 F.3d at 1216.  *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. at 923 explains that "when a party acts with knowledge of a pending bankruptcy, a violation of the stay is considered willful and damages must be assessed."  *Lile*, 103 B.R. at 836.  An innocent stay

8

violation can become willful if the creditor fails to remedy the violation after receiving notice of the stay. *Del Mission Ltd.*, 98 F.3d at 1151; *Abrams v. Sw. Leasing and Rental Inc.*, 127 B.R. 239, 241-44 (9th Cir. BAP 1991).

Missoula Bone & Joint continued its collection efforts after it received notice of the filing of Debtor's bankruptcy petition and even after the filing of Debtor's Motion seeking sanctions against it for willful violations of the stay. Such actions by Missoula Bone & Joint shown by Ex. 3, 4 and 6, constitute willful violations of the stay with knowledge of Debtor's bankruptcy. *Eskanos & Adler*, 309 F.3d at 1214-15; *Dyer*, 322 F.3d at 1191; *Roman*, 283 B.R. at 8; *Risner*, 317 B.R. at 835.

### Actual Damages.

Debtor offered evidence in the form of testimony showing actual damages caused by Missoula Bone & Joint's willful violations of the stay in the amounts of: $34.50 to $46 in lost hourly wages; and $3.96 in mileage for Debtor to attend the hearing. Debtor's evidence is uncontroverted; the Court finds that the Debtor is a credible witness. The Court finds that the total amount of lost wages and mileage caused by Missoula Bone & Joint's willful violations of the stay is $49.96.

### Emotional Distress Damages.

Debtor asks for damages for emotional distress caused by Missoula Bone & Joint, including stress and harm to her psychological well being, confusion, and causing her to be emotionally upset. The debtor in *Snowden* was awarded $12,000 for emotional distress because of testimony that she panicked, was out of her mind with worry, could not concentrate, was agitated, and felt miserable. *Snowden,* 769 F.3d at 655.

Emotional distress damages are permitted under § 362(k) if the debtor "(1) suffer[s] significant harm, (2) clearly establish[es] a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *Snowden*, 769 F.3d at 656-57, quoting *In re Dawson*, 309 F.3d 1139, 1149 (9th Cir. 2004). In *Snowden* the Ninth Circuit affirmed an award of emotional damages, finding the debtor credible and that she clearly established that she suffered significant emotional harm as a result of the creditor cashing a check, which upended the debtor's finances and efforts to manage her affairs, continuing to call her postpetition and refusal to rectify the situation it created. *Id.*, 769 F.3d at 657, 661.

In the instant case the evidence shows that Lynsey already was under stress for an extended period of time because of her financial problems, injury, surgery and rehabilitation before she filed her bankruptcy petition. These stressors existed prepetition and cannot be the subject of an award of emotional damages against Missoula Bone & Joint for postpetition collection. Admittedly, after she contacted her attorney and he filed the Motion, Missoula Bone & Joint sent her another payment invoice. The Court observed Lynsey's demeanor closely while testifying under oath and cross-examination and the Court finds that she is credible. However, the Court finds and concludes that Lynsey failed to satisfy her burden of clearly establishing that she suffered significant harm or that she demonstrated a causal connection between that significant harm and Missoula Bone & Joint's violations of the automatic stay, as required by *Snowden* and *Dawson.* 769 F.3d at 657.

Lynsey suffered from stress prior to and after her bankruptcy filing. She did not seek medical attention for the additional stress caused by Missoula Bone & Joint, which may not be

absolutely required, but certainly may be an indicator of the stress level.  The Court finds that the emotion distress Lynsey suffered as a result of Missoula Bone & Joint's violations of the stay is indistinct from the pressures inherent in the bankruptcy process.

Even if a violation of the stay is not egregious, a debtor may recover emotional distress damages that arose from a stay violation and a debtor may establish emotional distress damages without corroborating evidence, if the circumstances make it obvious "that a reasonable person would [have suffer[ed] significant emotional harm." *Sternberg*, 595 F.3d at 943 n.1, quoting *Dawson*, 309 F.3d at 1149-51.  In this Court's view the circumstances in the instant case, where Missoula Bone & Joint continued to send collection letters postpetition, by itself, do not make it obvious that a reasonable person would have suffered significant emotional harm.

The emotional distress awarded in *Snowden* amounted to $12,000.  769 F.3d at 655. There, the offending creditor used an electronic funds transfer to overdraw the debtor's bank account and made a series of harassing phone calls to the debtor at the hospital where she worked, causing her panic and making her "out of her mind."  In the instant case, by contrast, the Court finds that the evidence of emotional distress is insufficient for any award.  Lynsey testified that the postpetition collection letters caused her confusion and upset her emotionally.  However, the emotional damages caused by Missoula Bone & Joint's stay violations were less severe than the evidence of emotional damages shown in *Snowden*, and cannot be quantified separately from the stress which Lynsey testified she suffered before her bankruptcy.

Lynsey demonstrated that she is resilient, and disciplined.  She endured the emotional stress caused by Missoula Bone & Joint without treatment, is employed and has received her discharge.  After consideration of the record, the Court declines to award emotional distress

11

damages under § 362(k).  *See Snowden,* 769 F.3d at 656-57; *Dawson*, 390 F.3d at 1149.

**Punitive Damages.**

Lynsey argues that an award of punitive damages against Missoula Bone & Joint is appropriate because it "has had issues with the stay violation in the past[.]"  Debtor offered Ex. 5 as evidence at the hearing in support of this contention.  Debtor's Motion contends that Missoula Bone & Joint has demonstrated reckless and callous disregard for the law in failing to provide a policy or employee training on how to comply with the automatic stay.  However, Debtor did not offer any evidence, other than Ex. 5,  at the hearing upon which the Court could base such findings.

Section 362(k) provides for punitive damages "in appropriate circumstances."  *Snowden*, 769 F.3d at 657.  "An award of punitive damages requires "some showing of reckless or careless disregard for the law or rights of others."  *Id.,* quoting *In re Bloom*, 875 F.2d 224, 228 (9th Cir. 1989).  In *Snowden* the Ninth Circuit affirmed an award of punitive damages in the amount of $12,000 based on evidence that the creditor failed to provide a policy or employee training about how to address debt collection following a bankruptcy.  *Snowden*, 769 F.3d at 657-58.

In the instant case Missoula Bone & Joint ignored Debtor's bankruptcy filing and the automatic stay and ignored the Debtor's Motion for Sanctions and the hearing.  The evidence does not show the same degree of reckless or callous disregard for the law or rights of others by Missoula Bone & Joint as shown in *Snowden*.  However, the Court concludes that the evidence is sufficient to find that Missoula Bone & Joint's failed to comply with the stay.  Missoula Bone & Joint sent the Debtor two invoices for prepetition debts after the date of the filing of Debtor's bankruptcy petition and sent a third invoice after receiving Debtor's Motion.  In this Court's view

12

this is sufficient evidence of reckless or callous disregard by Missoula Bone & Joint for the bankruptcy stay and Lynsey' rights to justify an award of punitive damages.  *Snowden*, 769 F.3d at 657.

In *Eskanos* the Ninth Circuit affirmed an award of damages in the amount of $1,000.00, including punitive damages, imposed against a creditor when it delayed dismissing a state court collection action.  309 F.3d at 1212, 1215-16.  Debtor's attorney requested an award of punitive damages at the hearing in amounts from $7,500 to $10,000 in order to prompt Missoula Bone & Joint to change its policies.  This Court agrees that an award of punitive damages is warranted in this case against Missoula Bone & Joint after it received notice of Debtor's bankruptcy filing and Debtor's Motion, but declines to award punitive damages in the amount requested by the Debtor.

The notice of commencement of the case sent to Missoula Bone & Joint had an incomplete name and address.  While the Court does not believe that the notice of commencement of the bankruptcy case failed to reach Missoula Bone & Joint, the Court deems a smaller award is justified and awards the Debtor $200 each for the two invoices shown by Ex. 3 and 4.  Ex. 6 was sent to Debtor by Missoula Bone & Joint after it was served with Debtor's Motion for Sanctions at its address including the suite number.  Ex. 6 is not mitigated by a possible misunderstanding by incorrect name or incomplete address, and the Court awards the Debtor $500 in punitive damages for Ex. 6.

The total punitive damages awarded by this Court against Missoula Bone & Joint is $900.  The Debtor did not offer any evidence of Missoula Bone & Joint's policies or employee training regarding bankruptcy and did not offer any evidence of Missoula Bone & Joint's financial condition, which could prompt the Court to consider a larger award of punitive damages.

13

**Attorney's Fees.**

The BAP in *Roman* cited Congress' intent that an award of attorney's fees and costs is mandatory upon a finding of a willful violation of the stay.  *Id.*, 283 B.R. at 7, 9-10; *Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 876, 879 (9th Cir. BAP 1998); *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995).  The Ninth Circuit in *Sternberg* concluded that attorney fees incurred in prosecuting a damages action for a stay violation, where the stay violation has been cured, is akin to an ordinary damages action for which attorney fees are not available under the American Rule.  595 F.3d at 948 ("We have never said that the stay should aid the debtor in pursuing his creditors.  The stay is a shield, not a sword.  *See, e.g.* [*Lynseyis Motors, Inc.*, 997 F.2d at 585] ").  Earlier this year, the Ninth Circuit overruled *Sternberg.  In re Schwartz-Tallard*, 803 F.3d at 1097, 1101 (9th Cir. 2015).  In the instant case the result would be the same under *Sternberg* or *Schwartz-Tallard*, because the evidence showed that Missoula Bone & Joint continued its stay-violating conduct even after the Debtor filed her Motion for Sanctions.

The Court notes that the BAP has observed that "fee shifting statutes, like § 362([k]) have given debtors an opportunity to use the statute as a sword rather than a shield against creditors, to courts' dismay[,]" and "that rewarding debtors too lavishly in § 362([k]) actions will encourage a cottage industry of precipitous § 362([k]) litigation[.]"  *Roman*, 283 B.R. at 11, quoting *McLaughlin v. Fireman's Trust Mortg. Corp. (In re McLaughlin)*, 96 B.R. 554, 560 (Bankr. E.D. Pa. 1989).

Under *Roman* the Court must examine whether the Debtor could have mitigated her damages and in determining the appropriate amount of attorney's fees to award courts look "to two factors:  (1) What expenses or costs resulted from the violation; and (2) what portion of

14

those costs was reasonable, as opposed to costs that could have been mitigated." *Roman*, 283 B.R. at 12, quoting *In re GeneSys, Inc.,* 273 B.R. 290, 296 (Bankr. D.C. 2001) (other citations omitted).

In *Snowden* the Ninth Circuit explained: "*Sternberg* established a bright-line rule that attorneys' fees incurred in an attempt to collect damages *once the stay violation has ended* are not recoverable." 769 F.3d at 658, quoting *Sternberg*, 595 F.3d at 948. With *Sternberg* having been overruled by *Schwartz-Tallard*, the evidence at the hearing showed that Debtor's attorney Geranios tried but was unable to stop Missoula Bone & Joint from sending the Debtor postpetition collection demands for payment. Missoula Bone & Joint ignored the bankruptcy notice, ignored Debtor's Motion for Sanctions and kept sending the Debtor invoices for prepetition debt.

Therefore, under *Schwartz-Tallard, Sternberg*, *Snowden*, and *Roman*, 283 B.R. at 12, Lynsey's attorney's fees incurred in preparing and litigating her Motion for sanctions against Missoula Bone & Joint for its willful violations of the stay are fully recoverable. The facts in this case are similar to the facts in *Snowden* and *Schwartz-Tallard*, 803 F.3d at 1097-98. In *Snowden* the creditor failed its affirmative duty to return property which it had wrongfully seized from the estate, but instead responded to an offer to settle with an email containing implied conditions and Snowden had to go to court to end the stay violation. *Snowden*, 769 F.3d at 659. In *Schwartz-Tallard* the court awarded the debtor attorney fees because she was forced to defend a creditor's appeal of the bankruptcy court's ruling that the creditor violated the stay. 803 F.3d at 1098. In the instant case, Missoula Bone & Joint failed its affirmative duty to cease and desist from sending collection demands after the date of filing of Debtor's bankruptcy petition.

15

Missoula Bone & Joint did not respond or offer to settle Debtor's Motion, but simply has ignored all of these proceedings.

The Ninth Circuit concluded in *Schwartz-Tallard*:

> § 362(k) is best read as authorizing an award of attorney's fees incurred in prosecuting an action for damages under the statute. Although § 362(k) makes such fee awards mandatory rather than discretionary, we do not think that feature of the statute will result in unnecessary litigation brought solely to drive up the award. Only an award of fees reasonably incurred is mandated by the statute; courts awarding fees under § 362(k) thus retain the discretion to eliminate unnecessary or plainly excessive fees. *In re Dawson*, 390 F.3d 1139, 1152 (9th Cir. 2004). Sound exercise of this discretion will provide a sufficient check on any abuses that might otherwise arise.

*Schwartz-Tallard*, 803 F.3d at 1101.

Accordingly, the Court awards Lynsey attorney's fees in the amount of $1,700.00 incurred in remedying Missoula Bone & Joint's stay violations under § 362(k). *Snowden*, 769 F.3d at 660; *Schwartz-Tallard*, 803 F.3d at 1101. The Court finds that the $1,700.00 in fees for Geranios' services is reasonable; Missoula Bone & Joint could have immediately and affirmatively stopped collection activity after receipt of the bankruptcy notice or notice of Debtor's Motion.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a).

2. Lynsey's Motion for Sanctions against Missoula Bone & Joint for willful violation of the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Lynsey satisfied her burden of proof to show by a preponderance of the evidence that Missoula Bone & Joint willfully violated the automatic stay by sending her collection demands postpetition, and by refusing Debtor's attorney's request that it cease sending collection

16

demands, with notice and actual knowledge of the automatic stay.  Debtor showed actual damages of $46.00 in wages lost attending the damages hearing; and $3.96 in mileage to attend the hearing.  The total actual damages is the sum of $49.96.

4.  Lynsey satisfied her burden to show reckless or careless disregard by Missoula Bone & Joint for the automatic stay and Lynsey's rights.  The Court awards Lynsey punitive damages against Missoula Bone & Joint in the amount of $900 for its three postpetition collection demands sent to the Debtor in willful violation of the stay.

5.  Lynsey is entitled to an award of attorney's fees related to remedying Missoula Bone & Joint's stay violation in the total amount of $1,700.00.

**IT IS ORDERED** a separate Judgment shall be entered in conformity with the above against Missoula Bone & Joint, LLC, in favor of the Debtor Lynsey Bourke in the following amounts:  (1) $49.46 for actual damages caused to the Debtor by Missoula Bone & Joint's willful violations of the stay in the form of lost wages and mileage under § 362(k); (2) awarding Lynsey $900 in punitive damages against Missoula Bone & Joint under § 362(k); and (3) awarding Lynsey $1,700.00 in attorney's fees against Missoula Bone & Joint under § 362(k), for a total of $2,649.46.

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge